**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALFRED DEGENNARO, | |
| Plaintiff, | |
| v. | Civil Action No. 19-16419 (MAS) (LHG) |
| BARRY N. GRABELLE, *et al.*, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant the State of New Jersey's (the "State") Motion to Dismiss (ECF No. 12) and Defendant Dr. Barry N. Grabelle's ("Dr. Grabelle") (collectively, "Defendants") Motion to Dismiss for Lack of Jurisdiction (ECF No. 13) and Motion to Dismiss for Failure to Serve and Affidavit of Merit (ECF No. 17). Pro se[1] Plaintiff Alfred DeGennaro ("Plaintiff") opposed the first two motions in a single filing (ECF No. 14) and the parties replied (ECF No. 15, 16). Plaintiff opposed Dr. Grabelle's second motion (ECF No. 18) and Dr. Grabelle replied (ECF No. 19). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the State's Motion to Dismiss is granted and Dr. Grabelle's Motions to Dismiss are moot.

---

[1] Although Plaintiff is proceeding pro se, Plaintiff avers that he is "an attorney at law in the State of New Jersey." (Compl. 2, ECF No. 1.)

## I.     BACKGROUND[2,3]

### A.     Factual History[4]

Since 2014, Plaintiff has been treated by Dr. Grabelle for a thyroid condition. (Compl. ¶¶ 1–2, ECF No. 1) Since January 2013, Plaintiff has been taking 150 micrograms of Levothyroxine per day to treat his thyroid condition. (*Id.* ¶ 2.) On or about February 17, 2017, Plaintiff underwent a blood test and Dr. Grabelle did not request that his thyroid stimulation hormone ("TSH") levels be measured. (*Id.* ¶ 15.) A patient's TSH level can indicate whether he or she has an overactive or underactive thyroid. (*Id.* ¶ 6.)

"On or about April 13, 2017, Plaintiff noticed a sudden and significant hair loss from the top of his head." (*Id.* ¶ 3.) After conducting a Google search, Plaintiff concluded that the hair loss may have been caused by the Levothyroxine he was taking. (*Id.*) On that same day, Plaintiff visited Dr. Grabelle's office and brought this issue to his attention. (*Id.* ¶ 4.) Dr. Grabelle prescribed Plaintiff an additional 25 micrograms of Levothyroxine, to be taken daily. (*Id.* ¶ 5.) Around the same time, Plaintiff underwent a series of blood tests that measured his TSH levels. (*Id.* ¶ 6.)

---

[2] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] The Court notes that, apart from a brief introduction and discussion of venue, Plaintiff devotes the first several pages of his Complaint to a drawn-out esoteric discussion, that includes references to writings of Thomas Hobbes and John Locke, relating to "Plaintiff's primary legal argument . . . that a defendant is presumed to know the law under the old maxim that 'ignorance of the law is no excuse.'" (*See generally* Compl.) Plaintiff's Complaint also includes a section entitled, "The Legal Argument of Equal Protection." (*Id.* at 9.) On a motion to dismiss, a court will "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citations omitted). The Court, accordingly, did not consider any of the legal arguments asserted by Plaintiff in his Complaint.

[4] The first factual allegations appear on page 12 of the Complaint.

On or about July 7, 2017, Dr. Grabelle raised Plaintiff's daily dose of Levothyroxine to 200 micrograms. (*Id.* ¶ 9.) During an office visit on or about August 13, 2017, Dr. Grabelle decreased Plaintiff's daily dosage to 150 micrograms. (*Id.* ¶ 13.) On or about September 15, 2017, Plaintiff underwent a blood test and was informed by Dr. Grabelle that his TSH level was normal. (*Id.* ¶ 14.)[5] On or about June 11, 2018, Plaintiff underwent another blood test and had a TSH level of 0.693. (*Id.* ¶ 16.)

In or around fall 2018, Dr. Grabelle informed Plaintiff that he was considering retirement. (*Id.* ¶ 17.) A short time later, Plaintiff received correspondence from Dr. Grabelle explaining how Plaintiff could obtain his medical records. (*Id.*) Dr. Grabelle subsequently retired and Plaintiff was able to obtain his medical records. (*Id.* ¶ 18.) Plaintiff avers that when he received the records, he found the following entries corresponding to blood tests Plaintiff had undergone:

| Date | Result |
| --- | --- |
| February 12, 2014 | 1.410 |
| December 20, 2014 | 1.040 |
| March 4, 2016 | 0.067 (flagged as low) |
| March 22, 2016 | 0.106 (flagged as low) |
| June 30, 2017 | 0.097 (flagged as low) |
| August 11, 2017 | 0.012 (flagged as low) |
| September 15, 2017 | 6.570 (flagged as high) |
| June 11, 2018 | 0.693 |

(*Id.*)[6]

---

[5] Plaintiff avers, without providing support, that "LabCorp's normal TSH level interval [is] between [0].45 to 4.50." (Compl. ¶ 7.)

[6] The Court notes that although Plaintiff repeatedly refers to his medical records, he did not attach even an excerpt of these records to the Complaint. While a court generally does not consider anything beyond the four corners of the complaint on a motion to dismiss, "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted).

3

Plaintiff later began treatment with a new physician and underwent a blood test on February 28, 2019, which found his TSH level was 0.087. (*Id.* ¶ 21.) Plaintiff's new physician lowered his dosage of Levothyroxine to 125 micrograms. (*Id.* ¶ 22.) On or about April 1, 2019, Plaintiff underwent a blood test which showed his TSH level was 0.730. (*Id.*) Plaintiff alleges that, for the 27 months that he was under Dr. Grabelle's treatment, his TSH level "[was] outside of normal TSH levels." (*Id.* ¶ 23.) Plaintiff alleges that he has experienced hair loss, depression, and fatigue "as a direct and proximate cause of [Dr. Grabelle's] improper treatment of Plaintiff's thyroid [condition]." (*Id.* ¶ 25.)[7]

## B. Procedural History

On August 6, 2019, Plaintiff filed a Complaint against Defendants alleging five counts: (1) Count One, alleging that N.J. Stat. Ann. §§ 2A:53A–26, *et seq.* (the "New Jersey AOM Statute"), is unconstitutional and violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment, U.S. CONST. AMEND. XIV (Compl. ¶¶ 31–35); (2) Count Two, requesting injunctive relief tolling the time period by which an affidavit of merit ("AOM") must be filed (*Id.* ¶¶ 36–38); (3) Count Three for common law breach of contract against Dr. Grabelle (*Id.* ¶¶ 39–43); (4) Count Four for common law breach of contract against Dr. Grabelle (*Id.* ¶¶ 44–49); and (5) Count Five for common law negligence against Dr. Grabelle (*Id.* ¶¶ 50–53). Dr. Grabelle answered the Complaint on September 26, 2019. (ECF No. 10.) On October 7, 2019, the State filed its Motion to Dismiss for Failure to State a Claim. (ECF No. 12.) On October 17, 2019, Dr. Grabelle filed a Motion to Dismiss for Lack of Jurisdiction. (ECF No. 13.) On January 27, 2020, Dr. Grabelle filed a Motion to Dismiss for Failure to Serve an Affidavit of Merit. (ECF No. 17.)

---

[7] Plaintiff alleges that from March 4, 2016 through September 15, 2017, he experienced fatigue and depression. Plaintiff concedes, however, that he did not report these symptoms to Dr. Grabelle. (Compl. ¶ 24.)

4

## II.     LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations and citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.    DISCUSSION

It is well-settled that "[a] document filed *pro se* is to be liberally construed." *Shah v. Caesars Entm't Corp.*, No. 18-14108, 2019 WL 5558356, at *2 (D.N.J. Oct. 28, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted)). However, "[pro se litigants] cannot flout procedural rules—they must abide by the same rules that apply to

5

all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) (stating the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")).

### A. Overview of the New Jersey AOM Statute

"The New Jersey legislature enacted the AOM Statute as part of a tort reform package designed to strike a fair balance between preserving a person's right to sue and controlling nuisance suits." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 290 (3d Cir. 2012) (internal quotations omitted) (citations omitted). "The requirement exists to provide expert verification of the merits of the assertions in the complaint so that 'malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings.'" *Id.* (emphasis omitted) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000)).

The New Jersey AOM Statute requires, in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J. Stat. Ann. § 2A:53A-27. "In lieu of an affidavit, the plaintiff may provide a sworn, written statement that, after written request, the defendant failed to provide the plaintiff with records that have a substantial bearing on the preparation of the affidavit." *Lee v. Thompson*, 163 F. App'x 142,

143 (3d Cir. 2006) (citing N.J. Stat. Ann. § 2A:53A-28). A plaintiff's "[f]ailure to provide either the affidavit or the sworn statement within 60 days [of the filing of the defendant's answer], or 120 days if the court grants an extension for good cause, results in dismissal for failure to state a cause of action." (*Id.*) (internal quotation omitted) (citing N.J. Stat. Ann. § 2A:53A-29); *see also Douglass v. Obade*, 819 A.2d 445, 446 (N.J. Super. Ct. App. Div. 2003) (noting that the "end of the line . . . the drop-dead date, is 120 days.").

### B. The State's Motion to Dismiss

Plaintiff contends that the time period for filing an affidavit of merit, imposed by the AOM Statute, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment because it requires that "prior to the Plaintiff provided [sic] the Affidavit of Merit, Plaintiff should have knowledge of the law (the proper standard of care) imputed to Plaintiff resulting in a shifting of the burden of coming forwarded [sic] with evidence to the Defendant Doctor (his explanation of his treatment of the Plaintiff's thyroid)." (Compl. ¶ 33.)[8] The Court addresses Plaintiff's arguments as they relate to the Equal Protection and Due Process Clauses in turn.

#### 1. Plaintiff Fails to State a Claim that the AOM Statute Violates the Equal Protection Clause

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "In reviewing an Equal Protection claim, a court must first determine whether the alleged state action burdens a fundamental constitutional right or targets a suspect class." *ASAH v. N. J. Dep't of Educ.*, 330 F. Supp. 3d 975, 1007 (D.N.J. 2018) (internal quotation omitted) (citing *State Troopers*

---

[8] Plaintiff's Complaint subsequently describes a burden-shifting schema created by Plaintiff, that Plaintiff argues should govern medical malpractice cases, which places the initial "burden of coming forward with evidence of the proper standard of care" on "the Defendant Doctor." (*See* Compl. ¶ 34.)

7

*Non-Commissioned Officers Ass'n of N.J. v. New Jersey*, 399 F. App'x 752, 754 (3d Cir. 2010)). "If a classification neither burdens a fundamental right nor targets a suspect class, [the Court] will uphold it so long as it bears a rational relation to some legitimate end." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013), *as amended* (May 10, 2013) (internal quotations omitted) (citing *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). "However, a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage . . . must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *ASAH*, 330 F. Supp. 3d at 1007–08 (citing *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992)) (internal quotation omitted) (alteration in original).

Here, Plaintiff alleges that the time period requirements of the AOM Statute violate the Equal Protection Clause. (Compl. ¶ 33.) As an initial matter, the Court notes that Plaintiff does not specifically allege that he is a member of a suspect class such as race, alienage, religion, or national origin. (*See generally id.*; *see generally* Pl.'s Opp'n Br., ECF No. 14.)[9] Liberally construing Plaintiff's pro se filings, it appears that Plaintiff is asserting he belongs to one of two alleged protected classes: (1) plaintiffs in medical malpractice actions; and (2) individuals who cannot afford the expenses of litigation. (*See* Pl.'s Opp'n Br. at 3 ("[t]his is also true for remedying the unconstitutional treatment of the overall class, i.e. [p]laintiffs"), at 6 ("our society has found itself

---

[9] Similar to his Complaint, Plaintiff devotes the first several pages of his Opposition Brief to a confusing discussion of why his proposed alternative to the affidavit of merit system would be superior and have "far-reaching benefits." (*See* Pl.'s Opp'n Br. 1–3, ECF No. 14.)

with two classes of people . . . the minority that can afford litigation [] and the majority [who cannot and] is forced to settle").)[10]

As to fundamental rights, Plaintiff avers that "[s]ubstance and time frame can easily trammel on fundamental rights (the order in which the most expensive expert testimony is presented). . . . The financial disparity in litigation is not a small fee, because medical experts are some of the most expensive in litigation." (*Id.* at 5.) Plaintiff concludes, without factual or legal support, that "[t]his case is about strict scrutiny." (*Id.* at 6.)

Plaintiff's arguments are unconvincing and unsupported. Plaintiff is not a member of a suspect class and has not sufficiently alleged that the AOM Statute trammels a fundamental right. The Court, accordingly, finds that the rational basis test is the appropriate level of scrutiny. "While the rational basis test is not a toothless one, the defendant need only demonstrate that the act is rationally related to some legitimate government purpose." *ASAH*, 330 F. Supp. 3d at 1012 (internal quotations and citations omitted). The AOM Statute was designed "to strike a fair balance between preserving a person's right to sue and controlling nuisance suits." *Nuveen*, 692 F.3d at 290 (internal quotations and citations omitted). It imposes the simple requirement that a plaintiff file an affidavit of merit within 60 or 120 days after the defendant answers the complaint. *See* N.J. Stat. Ann. § 2A:53A-27. The AOM Statute, therefore, is rationally related to the legitimate government purpose of controlling nuisance suits. The Court, accordingly, finds Plaintiff has failed to state a claim that the AOM Statute violates the Equal Protection Clause. *See Stephens v. City of Englewood*, No. 14-5362, 2015 WL 6737022, at *5 n.3 (D.N.J. Nov. 3, 2015) (finding plaintiff's argument that the AOM Statute was facially unconstitutional because it imposes excessive

---

[10] (*See also* Pl.'s Opp'n Br. at 9–10 ("[u]pholding medical treatment standards through the ability of citizens to enforce their claims through litigation for the protection of their families and themselves is a fundamental right.")).

9

litigation costs on parties was "without merit," noting that litigants who are granted *in forma pauperis* status must still bear the costs of expert witness fees); *see also Alan J. Cornblatt, P.A. v. Barow*, 708 A.2d 401, 415 (N.J. 1998) (noting, in dicta, "[e]qual protection poses no threat to the [AOM] [S]tatute as the affidavit of merit requirement is a rational and reasonable requirement imposed by the Legislature and is likely to assist in the objective of reducing frivolous lawsuits.").

### 2. Plaintiff Fails to State a Claim that the AOM Statute Violates the Due Process Clause

The Due Process Clause prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Plaintiff's Complaint does not specify whether he is alleging the AOM Statute violates procedural or substantive due process. (*See* Compl. ¶¶ 31–35.) Because Plaintiff is pro se, the Court discusses both procedural and substantive due process.

"To state a claim for violation of procedural due process, [p]laintiffs must allege that: (1) they were deprived of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property; and (2) that the procedures available did not provide due process of the law." *ASAH*, 330 F. Supp. 3d at 1011 (internal quotation and citation omitted). "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)."'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Plaintiff's argument that the AOM Statute creates a protected property interest is unconvincing and unsupported by citation to relevant legal authority. Plaintiff merely avers that "[u]pholding medical treatment standards through access to the courts for the protection of

10

themselves and their families is a legitimate cla[i]m of entitlement." (Pl.'s Opp'n Br. 9.) Plaintiff offers no citation to relevant legal authority in support of this bald assertion. The Court, therefore, finds Plaintiff has failed to allege that the AOM Statute deprives him of a protected property interest. The Court, accordingly, finds Plaintiff fails to state a claim for a violation of procedural due process.

"Substantive due process challenges to a legislative or regulatory act are reviewed under a rational basis test." *ASAH*, 330 F. Supp. 3d at 1012 (citing *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012)). As noted in III.B.1, *supra*, the Court has already found that the AOM Statute is rationally related to the legitimate government purpose of controlling nuisance suits. The Court, therefore, finds Plaintiff has failed to state a claim for a substantive due process violation. Having found Plaintiff has failed to state a cause of action for a violation of the Equal Protection or Due Process Clauses, the Court, accordingly, grants the State's Motion to Dismiss.

### C. The Court Declines Supplemental Jurisdiction Over Plaintiff's Common Law Claims and Finds Dr. Grabelle's Motions to Dismiss Moot

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). For a district court to exercise supplemental jurisdiction, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 299 (3d Cir. 2003). A Court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Here, because the Court dismisses Plaintiff's federal Constitutional claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's common law claims. The Court, therefore, finds Dr. Grabelle's Motions moot.

### D. Plaintiff's Request for an Injunction[11]

Count Two of Plaintiff's Complaint requests an award of injunctive relief. Plaintiff states, in relevant part,

> If this Federal Court decides not to assert jurisdiction and transfers the cause of action to the New Jersey State Court, the time period in which this Federal Court takes to make its decision could prejudice the Plaintiff if an answer is filed before the jurisdictional decision is made.
>
> WHEREFORE, Plaintiff respectfully asks this Federal District Court for an injunction preventing the New Jersey State Superior Court from beginning the first 60-day time period prior to the date which this Federal District Court declines jurisdiction.

(Compl. ¶¶ 37–38.) Plaintiff's request is without merit and misunderstands the role that transfer and remand play in federal civil procedure.

A district court may remand a matter to state court if it was originally filed in state court and subsequently removed to federal court. *See* 28 U.S.C. § 1447(c). A district court may transfer

---

[11] To the extent the Court must address Plaintiff's request for an injunction on the merits, the Court finds that an injunction would be inappropriate. A "[p]reliminary injunction] is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citation omitted). Plaintiff bears the burden of establishing that (1) he is likely to succeed on the merits; (2) he is likely to suffer immediate, irreparable harm; (3) the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The first two factors are "gateway factors" and are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (Jun 26, 2017). "A plaintiff's failure to establish any element in [his] favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. VitMar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). Here, because Plaintiff has failed to state a claim, the Court finds that he has not established a likelihood of success on the merits. Plaintiff's request for an injunction, therefore, is denied.

a civil action to a different venue under 28 U.S.C. §§ 1404(a) or 1406(a). Section 1404(a) provides that the "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Here, this matter was not removed from state court. Rather Plaintiff directly filed his Complaint with this Court. The Court, therefore, cannot remand the matter to state court. The federal transfer statutes do not permit transfer from a federal court to a state court. Plaintiff's request, therefore, is without merit and is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court grants the State's Motion to Dismiss, and finds Dr. Grabelle's Motions to Dismiss moot. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 31, 2020